UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────



UNITED STATES OF AMERICA,

            v.

KIM BENACQUISTA,
RAYMOND BENACQUISTA,

            Defendants.

**Hon. Hugh B. Scott**

08CR94A

**Report
&
Recommendation**

───────────────────────────────

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 2). The instant matter before the Court is defendants' motions for various pretrial relief (Docket No. 29[1] (Kim Benacquista), 26[2] (Raymond Benacquista)). Pertinent to this Report and Recommendation, defendant Kim Benacquista seeks dismissal of all three counts of the Indictment on facial insufficiency grounds (Docket No. 29, Motions at 5-23[3]), striking portions of the Indictment (id. at 23-26), and defendant Raymond Benacquista seeks suppression of evidence seized pursuant to a search warrant, and alternatively seeks a Franks hearing, see Franks

---

[1] In support of this motion, defendant Kim Benacquista filed an earlier motion, Docket No. 21, exhibits for the motion, which was amended by the present motion, Docket No. 29, and a reply memorandum, Docket No. 35. In opposition, the Government filed a consolidated response, Docket No. 32.

[2] In support of this motion, defendant Raymond Benacquista filed his attorney's affidavit, Docket No. 26. In opposition, the Government filed a consolidated response, Docket No. 32.

[3] Codefendant Raymond Benacquista joins in this motion, especially seeking dismissal of Count III, the conspiracy allegation.

v. Delaware, 438 U.S. 154 (1978) (Docket No. 26, Raymond Defense Attorney Aff. ¶¶ 4-7, 8-30). These motions were argued on May 7, 2009, and deemed submitted (text entry, May 7, 2009).

Defendants' other motions (seeking various forms of discovery and disclosure) will be considered in a separate Order.

## BACKGROUND

Defendants are charged with two counts of willfully making false statements in their tax returns and a conspiracy count to defraud the United States. At issue here are the defendants' tax returns for 2002 and 2003 and the statement of income they received from Kim Benacquista's (hereinafter "Kim"; codefendant Raymond Benacquista will be referred hereinafter as "Raymond") business, Quality Quick Printing ("Quality") on tax returns filed for those tax years (see Docket No. 1, Indict.).

Count I alleges that Kim substantially under-reported the gross sales receipts for Quality in her 2001 tax return, willfully making a false statement in that return, in violation of I.R.C. § 7206(1) (id., Count I). Count II alleges that Kim made a similar false statement in her 2002 tax return (id., Count II).

In detail, Count III alleges a conspiracy between the Benacquistas to agree to defraud the United States (id., Count III). From 1994 (where the defendants filed no tax returns) to 2002, defendants allegedly under-reported their income by under-reporting the profits of Quality although that company generated what the Government termed "considerable income" in 2000-02 (id., Count III ¶¶ 10-15, 22-30, 14). Defendants received income from Quality that was not reported on their tax returns (see id., Count III ¶¶ 16-17, 19). During an Internal Revenue

Service ("IRS") audit of their 2001 tax return, defendants' designated power of attorney allegedly made false statements to revenue agents (id., Count III ¶ 20). This alleged conspiracy to defraud the United States is in violation of 18 U.S.C.[4] § 371 (id., Count III at page 17).

## DISCUSSION

I. Dismissal of Counts of Indictment on Facial Insufficiency

   A.  Dismissal of Counts I and II

Kim argues that Counts I and II of the Indictment do not state an offense because they each fail to allege that she willfully or knowingly made false statements to the IRS (Docket No. 29, Kim Motion at 6-11). In particular, Kim emphasizes that the Indictment does not charge that she knowingly filed a return with false statements (id. at 7, citing United States v. Tsanas, 572 F.2d 340, 343 (2d Cir.) (the statute "penalizes the filing of a false return"), cert. denied, 435 U.S. 995 (1978); Docket No. 35, Kim Reply Memo. at 2), arguing that mere signing of a false return is not illegal (Docket No. 29, Kim Motion at 8, citing United States v. Gilkey, 362 F. Supp. 1069 (E.D. Pa. 1973), relying on United States v. Bithoney, 472 F.2d 16 (2d Cir.), cert. denied, 414 U.S. 938 (1973)). The district court in Gilkey held that a federal tax form does not become a "return" for § 7206 liability until it is filed, 326 F. Supp. at 1071 & n.5 (id. at 8-9, quoting Gilkey). She contends that these single paragraph counts are impermissibly vague (id. at 11-12). She challenges the constitutionality of § 7206(1), either vague on its face or vague and unconstitutional as applied to her (id. at 12-15).

---

[4]The Indictment erroneously cites Internal Revenue Code but defendants cite to criminal code, 18 U.S.C. § 371, see Docket No. 29, Kim Motion at 15, as did the Government in its Response, Docket No. 32, at 1.

3

The Government contends that the Indictment on both of these counts alleges the elements of an offense under § 7206(1), that defendant made or caused to be made a federal income tax return, verified to be true; that the tax return was false as to a material matter (here the substantial under-reporting of gross sales for the business); that the defendant signed the return willfully and knowing it was false; and that the return contained a written declaration that it was made under the penalty of perjury, see United States v. LaSpina, 299 F.3d 165, 179 (2d Cir. 2002) (Docket No. 32, Gov't Response at 3-4, 4-5); see also United States v. Pirro, 212 F.3d 86, 89 (2d Cir. 2002) (adopting elements as stated by United States v. Peters, 153 F.3d 445, 461 (7th Cir. 1998), cert. denied, 525 U.S. 1070 (1999)). The Government claims that these counts provide sufficient detail to not make them impermissibly vague (id. at 5) and tracks the language of the statute charged and states the when and where of the alleged offense (id. at 4). The Government then notes that, in prosecutions under § 7206(1), the form or document has to be filed with the IRS in order to state an offense (id. at 7-8, citing cases, including United States v. Holroyd, 732 F.2d 1122, 1128 (2d Cir. 1984) (Kaufman, J.)).

1.   The Allegation of Filing of the Returns

Internal Revenue Code § 7206 provides, in pertinent part, "any person who—(1) . . . willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony." The issue here is whether an Indictment alleging violation of this section requires that it also allege that the defendant filed the offending return. The Indictment here charges that defendant's tax returns with the false statements were filed in 2002 and 2003 (Docket No. 1, Indict. Counts I, II).

4

But unlike the Government's contention (Docket No. 32, Gov't Response at 8-9), the Indictment does not allege <u>who</u> actually filed these returns[5]. The Government focuses upon the fact that these returns were filed (<u>see</u> <u>id.</u> at 7-8), but for criminal liability upon the defendant taxpayer must she be alleged to have filed the returns?

While the United States Court of Appeals for the Seventh Circuit in <u>Peters</u>, 153 F.3d at 461, stated that "§ 7206(1) requires only that the taxpayer file a return 'which he does not believe to be true and correct as to every material matter,'" the court then outlined the elements of a violation of that section, the elements later adopted by this Circuit in <u>Pirro</u>, <u>supra</u>, 212 F.3d at 89, and repeated in <u>LaSpina</u>, <u>supra</u>, 299 F.3d at 179, without express mention of filing the return, statement or document. The element that the defendant made or caused to be made the verified to be true tax return includes within it that this return is filed. As a result, the statute and an Indictment thereunder need not allege that defendant herself filed the offending return; rather, it merely needs to allege that the return, statement, or other document was filed by defendant or defendant caused the filing to occur. Defendant may have a defense refuting whether she filed it or caused it to be filed, but for pleading purposes, this Indictment is sufficient and **should not be dismissed** for alleging that it was filed by some unnamed person.

---

[5]Count I alleges (in relevant part) that "on or about the 15th day of April 2002, . . . the defendant, KIM BENACQUISTA, . . .did willfully make and subscribe a Form 1040 Tax Return with attached Schedule C for the taxable year 2001 which was verified by a written declaration that it was true and correct and was made under the penalties of perjury. Said Tax Return <u>was filed</u> with the Director, Internal Revenue Service Center at Andover, MA. Said Tax Return contained material statements which the defendant then and there well knew were not true in that the gross sales receipts for Quality Quick Printing were substantially under-reported." Docket No. 1, Indict., Count I (emphasis added). A similar allegation was made for tax year 2002 in Count II.

5

In United States v. Bithoney, 472 F.2d 16, 23-24 (2d Cir. 1973) (see Docket No. 32, Gov't Response at 8), the Second Circuit was determining the proper venue for the prosecution of a false immigration document case, analogizing it to the false tax return case of United States v. Newton, 68 F. Supp. 952 (W.D. Va. 1946), aff'd, 162 F.2d 795 (4th Cir. 1947), cert. denied, 333 U.S. 848 (1948). The Second Circuit in Bithoney stated that Newton supported its view "that a crime is not completed until the false document, in Newton a tax return, [in Bithoney] a form required by the immigration laws, is actually used by the participants in the criminal enterprise by filing it with the Internal Revenue Service or, as here, with the Immigration and Naturalization Service," concluding that a crime commenced in one district is properly venued there as well as where the crime is completed, Bithoney, supra, 472 F.2d at 24. Bithoney did not hold that filing by the taxpayer (rather than anyone else) was an element of the tax offense and Newton involved alleged aiding in the preparation of a false return, now a violation of I.R.C. § 7206(2). Thus, neither case goes as far as defendants would here to require filing by the defendant be an element of a violation of § 7206(1).

United States v. Gilkey, 362 F. Supp. 1069, 1070 (E.D. Pa. 1973) (cf. Docket No. 32, Gov't Response at 8), is another venue case for a § 7206(1) prosecution; here, defendant prepared and signed his 1970 and 1971 tax returns in the Western and Middle Districts of Pennsylvania and mailed the returns to the IRS Center in Philadelphia, in the Eastern District of Pennsylvania. There was no issue whether defendant mailed these returns. Then-District Judge Becker found that "while 'make' and 'subscribe' are words that connote preparing and signing, we think that a filled-in form 1040 does not become a 'return,' and a taxpayer does not 'make a return,' until it is filed with the Internal Revenue Service." Otherwise, an offense under

6

§ 7206(1) would be "completed once the tax form is filled in and signed, then a person can be prosecuted for (1) signing a return he never intends to file, or (2) signing a false return but then changing his mind about breaking the law and sending in a correct return instead, both of which are acts wholly unprejudicial to the functioning of the government," affirming the taxpayer's "right of self-correction," id. (citing Bithoney, supra, 472 F.2d at 23, and Newton, supra, 68 F. Supp. 952); see also id. at 1071 n.5 (quoting United States v. Horwitz, 247 F. Supp. 412, 414 (N.D. Ill. 1965) (on taxpayer's right of self-correction)). Again, the focus in Gilkey was where the prosecution would be heard and not whether defendant was liable if he did or did not file or cause to be filed the tax returns at issue.

Section 7206(1) "willfully makes and subscribes" has been construed to mean that a taxpayer made or caused to be made a verified tax return, with the process of making or causing to be made concluding with filing. It is not an element of this offense that the Government must allege that the taxpayer filed the return. Therefore, defendant Kim Benacquista's motion to dismiss Counts I and II should be **denied**.

    2.    Vagueness

Kim next argues that § 7206(1) is unconstitutionally vague because the when and where of the offenses alleged in Counts I and II depends upon the timing of the filing (Docket No. 29, Kim Memo. at 11), where there is no allegation of who actually filed. Alternatively, the statute is unconstitutional on its face because it does not refer to the filing of the false return (id. at 12).

The Government defends the constitutionality of the statute on its face and as applied here. The Government asserts that the statute clearly defines its scope, to materially false returns,

statements or documents signed under penalties of perjury, and submitted to the IRS. (Docket No. 32, Gov't Response at 6, 7.)

As noted by the Government (id. at 6), "a penal statute is not void for vagueness if it defines 'the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement," Arriaga v. Mukasey, 521 F.3d 219, 222 (2d Cir. 2008) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)). The statute here clearly defines the offense, making a materially false statement, return, or document signed under penalty of perjury. As discussed above, identifying the person who files that statement, return, or document is not an element of the offense and the statute is not rendered vague because it makes no mention of this step in the making or causing to make a false statement.

Therefore, the Counts I and II of the Indictment **should not be dismissed** for failure to allege that defendant filed the returns containing false statements on material facts and defendant's motion should be **denied**.

B.   Dismissal of Count III

Defendants jointly (Docket No. 29, Kim Motion at 15-23; Docket No. 26, Ray Def. Atty. Aff. ¶ 65) move to dismiss Count III of the Indictment because the Government did not allege deceit in that Count.

1.   Alleged Conspiracy

Section 371 of title 18 of the United States Code states that "if two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any

8

act to effect the object of the conspiracy, each shall be fined under this title or imprisoned . . . ." As a conspiracy to defraud the United States or one of its agencies, the defendants are charged with defrauding the United States by impeding, impairing, obstructing and defeating the lawful functioning of a federal agency in the pursuit of a governmental function, here the Department of the Treasury in the collection of revenue, see United States v. Klein, 247 F.2d 908 (2d Cir. 1957), cert. denied, 355 U.S. 924 (1958) (Docket No. 32, Gov't Response at 10; cf. Docket No. 29, Kim Memo. at 16). The elements of that offense are that defendant entered into an agreement to obstruct a lawful function of the Government by deceitful or dishonest means and at least one overt act in furtherance of the conspiracy, United States v. Ballistrea, 101 F.3d 827, 832 (2d Cir. 1996) (Docket No. 32, Gov't Response at 9-10).

Count III alleges that defendants attempted to defraud the United States "to hamper, hinder, impede, impair and obstruct by craft, trickery, deceit and dishonest means, the lawful and legitimate functions of the Internal Revenue Service in enforcing the federal tax statutes of the United States," (Docket No. 1, Indict., Count III Introductory ¶). Defendants argue that this Indictment misuses and expands the Klein-type of conspiracy to defraud allegations (Docket No. 29, Kim Memo. at 15-16), but comparing this Count with the case examples cited by defendants as appropriate conspiracy prosecutions shows that the allegations in this case are similar. Those cases, e.g., United States v. Aracri, 968 F.2d 1512 (2d Cir. 1992), allege creation of sham transaction to inflate corporate expenses. In this case, defendants allegedly under-reported Quality's earnings, defendants individually receiving money or having personal expenses paid from Quality's business account that were not accounted for in their income tax returns (see id. ¶¶ 13-19, 31-44 (payments made by Quality to Raymond without W-2 forms

9

being filed relative to Raymond)) while reporting business losses for Quality and no income or loss of income as a result (see id. ¶¶ 29-30 (regarding tax years 2001 and 2002)).

Despite defendants' complaints (see Docket No. 29, Kim Memo. at 17-18), the Indictment here does describe the essential nature of the alleged fraudulent scheme, that is, to under-report Quality's income and hide payments made by Quality to defendants that were not reported as income. Therefore, defendants' motion to dismiss Count III of the Indictment should be **denied**.

        2.        Strike Allegations Regarding Defendant's Agent

Kim also seeks to strike ¶¶ 48-50 of this Count because it alleges the actions of her power of attorney in allegedly misleading revenue agents (Docket No. 29, Kim Motion at 23-26). These paragraphs allege that defendants' agent presented amended tax returns for tax years 2000-02 signed by both defendants but that the supposed copy of the original 2002 tax year return was presented by that agent and it falsely represented to have been originally filed with the IRS signed by Kim only (Docket No. 1, Indict., Count III, ¶¶ 48-50). Curiously, Kim does not seek to strike a similar allegation made earlier in this Count (see id., ¶ 20).

The Government argues that it intends to call defendants' agent to testify to establish defendants' intention in submitting these documents to the IRS during the subsequent civil audit (Docket No. 32, Gov't Response at 13-14). If the evidence is relevant and admissible to the charge, "then regardless of how prejudicial the language is, [the charge] may not be stricken," United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990) (id. at 13).

A motion to strike surplusage from an Indictment "will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and

prejudicial," id. (internal quotation omitted) (Docket No. 32, Gov't Response at 13). These allegations are relevant to the charges within the conspiracy, basically showing attempts by defendants (through their attorney in fact) to hide their attempt to understate their income during the civil audit. Thus, defendant Kim Benacquista's motion to strike surplusage should be **denied**.

II.   Franks Hearing

On April 18, 2006, the Government applied to Magistrate Judge Schroeder for a search warrant of defendants' home and Quality's offices, based upon the affidavit of a revenue special agent (Docket No. 26, Ray Atty. Aff. ¶¶ 4-6, Exs. A-C). Ray contends that "two significant false statements which were central to the Government's purported showing of probable cause to obtain the warrants", when defendants purchased their expensive home and the discrepancies in their Schedule Cs for their tax returns (id. ¶¶ 7, 10-13, 16-23). The affidavit stated that defendants purchased their home in Orchard Park, New York, in 1998, rather than 1988 when they actually purchased it. The Government's theory was that defendants understated their income while they made significant purchases not reflected by the income reported on their tax returns. (Id. ¶¶ 10, 12, 8-9, 11.) The purchase was, in fact, ten years before the period of the IRS's investigation. According to defendants[6], without this false allegation, there is no support for the Government's theory that defendants lived above their reported income (id. ¶ 13).

The second false statement arises from the 2002 tax return furnished by defendants' counsel. According to the agent's affidavit, the IRS obtained a second copy of 2002 return, where agents noted that the expenses originally claimed in that form's Schedule C showed an

---

[6]Kim Benacquista joins in this motion, Docket No. 29, Kim. Motion at 27-31.

increase of over $230,000 from the first copy of form produced; the original Schedule C claimed almost $280,000 in expenses, while the copy claimed over $512,000 in expenses (id. ¶ 18). Ray argues that this discrepancy is false, rather the original Schedule C expenses claimed were almost $55,000 and not the almost $280,000 alleged, and the copy of Schedule C submitted by defendants' counsel claimed expenses of over $183,000, not the $512,000 figure alleged (id. ¶ 20). Ray concludes that the IRS warrant affidavit inflated these expenses by 279-511% (id. ¶ 21). Since the Government had both copies of the returns, the Government acted with reckless disregard for the truth in asserting the higher expense amounts in the warrant application (id. ¶ 22), which the Government recognized in a chart included later in the application (id. ¶ 23).

Defendants seek suppression of materials seized under this warrant because the Magistrate Judge was mislead (id. ¶ 25, citing United States v. Leon, 468 U.S. 897, 923 (1984)).

Suppression can be granted if defendant shows that the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth and the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding, United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1988)) (id. ¶ 26); United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008) (Docket No. 32, Gov't Response at 16). Alternatively, defendants seek a Franks hearing, see Franks v. Delaware, 430 U.S. 154, 171 (1978), to develop the factual record for these contentions (Docket No. 26, Ray Atty. Aff. ¶ 30).

The Government counters that great deference should be accorded to the probable cause determination of Magistrate Judge Schroeder (Docket No. 32, Gov't Response at 15, citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). Defendants need to make a substantial preliminary

12

showing prior to being granted a <u>Franks</u> hearing, <u>Franks</u>, <u>supra</u>, 438 U.S. at 171; <u>United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborough, CT</u>, 897 F.2d 97, 100 (2d Cir. 1990). The Government contends that the first misstatement was merely a typographical error and was not essential to a finding of probable cause (<u>id.</u> at 17) and the second misstatement arose from different calculation method used by the IRS agent from the one used by defendants (<u>id.</u> at 17, 19-21).

The first misstatement does not rise to the level warranting a <u>Franks</u> hearing. It appears that one digit was mistyped and other evidence supports probable cause for issuance of the warrant, from the under-reporting of Quality's income, the manner in which defendants filed their tax returns over time, and submission of false documents to the civil auditors (<u>see</u> <u>id.</u> at 18-19). But the second misstatement, the expenses attributed to the 2002 tax returns, warrants exploration. As to this issue a <u>Franks</u> hearing **will be held**. Defendants' motions for this relief is **granted in part**.

## CONCLUSION

Based upon the above, it is recommended that defendants motions (Docket Nos. 29 (Kim Benacquista), 26 (Raymond Benacquista)) be considered as follows: defendant Kim Benacquista's motion to dismiss the Indictment be **denied**; defendants' joint motion to dismiss Count III be **denied**; defendant Kim Benacquista's motion to strike portions of the Indictment be **denied**; and defendants joint motion for a <u>Franks</u> hearing for their motions to suppress evidence seized pursuant to search warrants is **granted in part** as discussed above. The Court will separately schedule the <u>Franks</u> hearing.

13

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

14

SO ORDERED.

/s/ Hugh B. Scott

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 8, 2009