UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

KIM BENACQUISTA,
RAYMOND BENACQUISTA,

Defendants.

**Hon. Hugh B. Scott**

08CR94A

**Report
&
Recommendation**

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 2). The instant matter before the Court is defendants' motions for various pretrial relief (Docket No. 29 (Kim Benacquista (hereinafter "Kim"; co-defendant Raymond Benacquista will be referred hereinafter as "Raymond")), 26[1] (Raymond Benacquista)); pertinent to this Report and Recommendation, defendant Raymond Benacquista seeks suppression of evidence seized pursuant to two search warrants, and alternatively has sought a Franks hearing, see Franks v. Delaware, 438 U.S. 154 (1978) (Docket No. 26, Raymond Defense Attorney Aff. ¶¶ 4-7, 8-30; see Docket No. 29, Kim Benacquista Motion at 26-27, 27-31, 49 (joining in co-defendant's motions, including suppression motion)). The original motions were argued and deemed submitted on May 7, 2009 (text entry, May 7, 2009). This Court issued a Report and

---

[1] In support of this motion, defendant Raymond Benacquista filed his attorney's affidavit, Docket No. 26, and joint memorandum of law on Franks issues, Docket No. 49. In opposition, the Government filed a consolidated response, Docket No. 32, and its response to defendants' Franks issue memorandum, Docket No. 50.

Recommendation (Docket No. 36) recommending denial of the defense motion to dismiss and granting a Franks hearing; that Report initially was adopted by Chief Judge Richard Arcara on August 19, 2009 (Docket No. 43; cf. Docket No. 44, Order vacating Docket No. 43 and reinstating motions).[2]

The Franks hearing was held on July 29, 2009 (Docket Nos. 40 (minutes), 41 (transcript)), and continued to August 24, 2009 (Docket Nos. 45 (minutes), 46 (transcript)). Following the hearing, submissions were due from the defense by October 28, 2009, and from the Government by November 12, 2009 (Docket Nos. 48 (Order), 45 (minute entry with original schedule)), and the motion was deemed submitted as of November 12, 2009. Defendant Raymond Benacquista submitted a joint memorandum of law on the Franks Issues on behalf of both defendants (Docket No. 49) and the Government submitted its response (Docket No. 50).

**BACKGROUND**

Familiarity with the initial Report and Recommendation (Docket No. 36) in this proceeding is presumed.

Defendants are charged with two counts of willfully making false statements in their tax returns, both in violation of I.R.C. § 7206(1), and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371[3], from defendants' tax returns for 2002 and 2003 and the

---

[2]Defendants' other motions (seeking various forms of discovery and disclosure) were considered in a separate Order, Docket No. 37.

[3]The Indictment erroneously cites Internal Revenue Code, Docket No. 1, at 17; but cf. id. at 1 (caption citing violation of 18 U.S.C. § 371), but defendants cite to criminal code, 18 U.S.C. § 371, see Docket No. 29, Kim Motion at 15, as did the Government in its Response, Docket No. 32, at 1.

statement of income they received from Kim's business, Quality Quick Printing ("Quality") on tax returns filed for those tax years (see Docket No. 1, Indict.).

Count I alleges that Kim substantially under-reported the gross sales receipts for Quality in her 2001 tax return, and willfully making a false statement in that return (id., Count I). Count II alleges that Kim made a similar false statement in her 2002 tax return (id., Count II).

In detail, Count III alleges a conspiracy between the Benacquistas to agree to defraud the United States (id., Count III). From 1994 (where the defendants filed no tax returns) to 2002, defendants allegedly under-reported their income by under-reporting the profits of Quality, although that company generated what the Government termed "considerable income" in 2000-02 (id., Count III ¶¶ 10-15, 22-30, 14). Defendants received income from Quality that was not reported on their tax returns (see id., Count III ¶¶ 16-17, 19). During an Internal Revenue Service ("IRS" or "Service") audit of their 2001 tax return, defendants' designated power of attorney allegedly made false statements to revenue agents (id., Count III ¶ 20).

*Search Warrant Applications*

On April 18, 2006, the Government applied to Magistrate Judge Schroeder for search warrants for defendants' home and Quality's offices, based upon the essentially identical[4] affidavits of a revenue special agent, Maxine Monshon (Docket No. 26, Raymond Atty. Aff. ¶¶ 4-6, Exs. A-C; Gov't Hearing Exs. 1, 2). Raymond initially contended that "two significant false statements which were central to the Government's purported showing of probable cause to obtain the warrants," when defendants purchased their expensive home and the discrepancies in

---

[4]See Docket No. 49, Raymond Post-Hearing Memo. at 5, conceding that the applications were essentially identical. For convenience, the Court will refer to Government Exhibit 1, the application and affidavit to search Quality's offices.

3

their Schedule Cs for their tax returns (Docket No. 26, Raymond Atty. Aff. ¶¶ 7, 10-13, 16-23). The affidavit stated that defendants purchased their home in Orchard Park, New York, in <u>1998</u>, rather than <u>1988</u> when they actually purchased it. He argued that the Government's theory was that defendants understated their income while they made significant purchases (including their Orchard Park home) not reflected by the income reported on their tax returns. (Id. ¶¶ 10, 12, 8-9, 11.) This purchase was, in fact, ten years before the period of the IRS's investigation. According to defendants, without this false allegation, there is no support for the Government's theory that defendants lived above their reported income (id. ¶ 13).

The second false statement arises from the 2002 tax return furnished by defendants' counsel. According to the agent's affidavit, the IRS obtained a second copy of the 2002 return, where agents noted that the expenses originally claimed in that form's Schedule C showed an increase of over $230,000 from the first copy of form produced; the original Schedule C claimed almost $280,000 in expenses, while the copy claimed over $512,000 in expenses (id. ¶ 18). Raymond argues that this discrepancy is false; rather, the original Schedule C expenses claimed were almost $55,000 and not the almost $280,000 alleged, and the copy of Schedule C submitted by defendants' counsel claimed expenses of over $183,000, not the $512,000 figure alleged (id. ¶ 20). Raymond concludes that the IRS affidavit inflated these expenses by 279-511% (id. ¶ 21). Since the Government had both copies of the returns, Raymond contends that the Government acted with reckless disregard for the truth in asserting the higher expense amounts in the warrant application (id. ¶ 22), which the Government recognized in a chart included later in the application (id. ¶ 23).

Defendants seek suppression of materials seized under these warrants because the Magistrate Judge was mislead (id. ¶ 25, citing United States v. Leon, 468 U.S. 897, 923 (1984)).

The Franks hearing considered misrepresentations regarding defendants' tax returns and did not consider the error in the date of defendants' purchase of their home (cf. Docket No. 36, Report & Rec. at 12-13 (finding that this misstatement did not rise to the level warranting a Franks hearing)). There was testimony and evidence produced that described the civil investigation and the facts learned by the IRS prior to applying for the search warrants. Special agent Menshon applied for the warrants based upon information supplied by the revenue agents assigned to the civil audit (Docket No. 41, Tr. of July 29, 2009, at 7-8, 40). As a result of the civil audit, defendants filed amended tax returns (1040Xs) for 2000 and 2002 tax years, declaring that they were mailed to the IRS on September 2003 (Docket No. 49, Raymond Post-Hearing Memo. at 2; Docket No. 46, Tr. of Aug. 24, 2009, at 80-83, 83-86, Def. Hearing Exs. B, C, D, E). During this process, a revenue agent served an information document request upon defendants, and was responded to by their tax counsel and power of attorney, Gary Borek. Borek replied that he was reviewing his clients records and later reviewed a box of documents with the revenue agent. That agent noted that Borek stated that he did not know if the 1040X returns were actually filed. (Docket No. 50, Gov't Franks Response at 3-4; Gov't Hearing Ex. 11, Examining Officer's Activity Report, at 7, Bates No. 007003; Docket No. 46, Tr. at 89.) Borek then produced copies of the 1040Xs in his clients' possession. A new revenue agent assigned to this case then reviewed the file and found that the purported original returns produced by Borek differed from the originally filed returns, with gross receipts in the original Schedule C of that

return stating half the receipts as was reported in Borek's provided copy (e.g., Gov't Hearing Ex. 1, Aff. ¶ 38; Docket No. 49, Raymond Post-Hearing Memo. at 5).

Special agent Menshon also stated that a check of IRS databases revealed that the amended returns were not filed with the Service (e.g., Gov't Hearing Ex. 1, Aff. ¶ 32; Docket No. 49, Raymond Post-Hearing Memo. at 6).

*Defense Arguments*

Defendants contend that there were five "intentional misrepresentations" in the supporting affidavit for the search warrants (Docket No. 49, Defs. Memo. at 9). They also renew their request for a Franks hearing on the misdated reference to when defendants purchased their home (id. at 9 n.3). They conclude that these misrepresentations were intentional and material to the probable cause determination, hence voiding the warrants that relied upon these statements for their issuance (id. at 7, 15-18). The first misstatement was the claimed misstatement of expenses on defendants' Schedule C (id. at 9-10). Defendants claim that special agent Menshon included the "costs of goods sold" as an "expense" in her warrant application affidavits when the costs of goods sold is a distinct category from expenses, hence misleading the Court in inflating the expenses actually claimed (id.).

Second, the warrant application affidavits each stated that revenue agent Alonzo McCardell obtained another copy of defendant's 2002 tax return (Gov't Hearing Ex. 1, ¶ 38) when in fact McCardell had not (Docket No. 49, Raymond Post-Hearing Memo. at 11). Borek testified that he never received any contact from McCardell and Menshon admitted that she should not have represented that this contact occurred (id.).

Third, Borek denied that he ever represented that the 2002 return was a copy of the one originally filed with the IRS (id. at 12-13). Fourth, the affidavit states that the amended returns were never filed with the IRS when, in fact, they were filed and acknowledged (id. at 13). Finally, the fifth misstatement was that expenses on the 2001 return (not subject of this Indictment) were misstated, with special agent Menshon again misstating the expenses by including the costs of goods sold as an expense (id. at 14).

Defendants argue that these misrepresentations are material because they bolster the Government's theory (presented to Magistrate Judge Schroeder) that defendants deliberately under-reported their income, conspired to conceal the under-reporting, and mislead Government auditors by producing fraudulent and contradictory tax documents (Docket No. 49, Raymond Post-Hearing Memo. at 15). Stating that Borek submitted two copies of 2000 and 2002 tax returns when he only did it once mislead the Magistrate Judge as well as claiming that the amended returns were never filed when in fact they were (id. at 15-16). Defendants argue that the misrepresentations of the Schedule C expenses made it appear that they were falsely inflating expenses to offset income (id. at 16). They conclude that these misstatements were, at minimum, made in reckless disregard of the truth (id. at 17)

*Government's Response*

The Government argues that defendants fail to show that the revenue agent intentionally or recklessly mislead the Court and concludes that their motion to suppress should be denied (Docket No. 50, Gov't Franks Response at 1). After pointing to the great deference to be accorded Magistrate Judge Schroeder's probable cause finding (id. at 6-7, quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)), the Government contends that defendants failed to show that

special agent Menshon intentionally or recklessly misled the Court (id. at 8). The five objectionable statements either were not misstatements or were made inadvertently rather than intentionally or recklessly (id. at 9). Alternatively, the Government offers the good faith exception under United States v. Leon, 468 U.S. 897 (1984), to uphold an otherwise suspect search (id. at 7 n.3).

As for the McCardell's contact with Borek, the Government recounts from McCardell's notes instances in which he contacted the power of attorney (Borek) in 2004 regarding reviewing defendants' tax documents (id. at 12-13; Gov't Hearing Ex. 11, Examining Officer's Activity Record at 8-9, Bates Nos. 007004-5 (noting McCardell's entries for Nov. 24, Nov. 27, and Dec. 1, 2004)).

Alternatively, the Government argues that even if the contested statements in the supporting affidavit are deemed to be misstatements, they are not material to Magistrate Judge Schroeder's probable cause finding to justify issuance of the search warrants (Docket No. 50, Gov't Franks Response at 18-21).

## DISCUSSION

I.  Franks Hearing and Suppression of Search Warrant Seized Evidence

Suppression can be granted if defendant shows that the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth and the alleged falsehoods or omissions were necessary to the issuing judge's probable cause finding, United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000) (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1988)) (Docket No. 26, Raymond Atty. Aff. ¶ 26); United States v. Falso, 544 F.3d 110, 125 (2d Cir. 2008) (Docket No. 32, Gov't Response at 16).

The Government counters that great deference should be accorded to the probable cause determination of Magistrate Judge Schroeder (Docket No. 32, Gov't Response at 15, citing Illinois v. Gates, 462 U.S. 213, 236 (1983); Docket No. 50, Gov't Franks Response at 6-7). The Government initially contended that the misstatement regarding Schedule C arose from different calculation method used by the IRS agent from the one used by defendants (Docket No. 32, Gov't Response at 17, 19-21).

Defendants' objections primarily arise from ¶ 38 of the supporting affidavit for the warrant applications, where copies of the 2002 original tax return that were furnished appear to differ from those on file with the Service.

    A.    First and Fifth Misrepresentations–Misstated Schedule C Expenses

Defendants claim that special agent Menshon defined "expenses" to include items not ordinarily included in "expenses" in swearing to discrepancies in defendants' Schedule C, both for 2001 and 2002 tax years (Docket No. 49, Raymond Post-Hearing Memo. at 9-10). They conclude that this interpretation inflated defendants' expense figures and gave an inaccurate view of their income and tax figures for 2001 tax year (see id. at 14).

The Government offers Black's Law Dictionary definition of "expenses" to justify the special agent's inclusion of cost of goods as an expense (see Docket No. 50, Gov't Franks Response at 10-11).

The cost of goods sold and business expenses, however, are two distinct items and are terms of art in the tax law, see 34 Am. Jur. 2d Federal Taxation ¶ 16001 (cost of goods sold is not trade or business deduction, but subtracted from gross receipts; the elements of cost of goods sold are not deductible business expense); Beatty v. Comm'r, 106 T.C. 268, 273 (1996); see also

9

Tax. Reg. §§ 1.63-1(a)(defining gross income derived from business as total sales less cost of goods sold), 1.162-1(a)(defining business expenses). Schedule C first deducts the cost of goods sold from gross receipts or sales and returns and allowances (see, e.g., Gov't Hearing Ex. 6, defs. 2002 1040 form, Sch. C, ll. 4, 33-42 (items in calculating cost of goods sold)), eventually to establish the gross income (id. Sch. C. l. 7). This gross income then is reduced by various categories of expenses (id. Sch. C. ll. 8-27, 28) to find the tentative profit or loss for the business for that tax year (id. Sch. C. l. 29). The IRS website referenced by the Government (Docket No. 50, Gov't Franks Response at 11, citing Business Expenses, http://www.irs.gov/businesses/small/article/0,,id+109807,00.html, hereinafter "IRS Business website") exemplifies the fact that certain expenses can be characterized as cost of goods sold, while others may not be. The quoted text by the Government[5] asserts the distinction between cost of goods sold and expenses, since expenses cannot be counted as cost of goods sold and as an expense, IRS Business website. That website also stressed that "it is important to separate business expenses from the following expenses: The expenses used to figure the cost of goods sold, Capital Expenses, and Personal Expenses," IRS Business website. Thus, Schedule C itself distinguishes between these two categories. This distinction should have been known and applied by revenue agents.

The issue here, however, is whether there was probable cause to search defendants' premises and business due to the different amounts reported for Quality's gross receipts. For purposes of showing probable cause for the warrants, the table in the affidavit at ¶ 40 shows

---

[5]"If you include an expense in the cost of goods sold, you cannot deduct it again as a business expense," Docket No. 50, Gov't Franks Response at 11, emphasis in original.

overall discrepancies between the original 2002 1040 filed with the Service, the copy furnished by Borek and the 2002 1040X, as well as defendants' deposits into a Merrill Lynch account. The last discrepancy was between the gross receipts reported by defendants in their returns and the receipts deposited in the Merrill Lynch account. The gist of this table for 2002 (similar to the tables for other tax years presented in that affidavit) was that defendants presented varying alternative figures for their business receipts and expenses, providing probable cause to justify a search of their records. The fact that Menshon misconstrued expenses (later in the calculation of the business's profit or loss) is not material to the probable cause determination.

        B.        Second Misrepresentation–McCardell Contact to Obtain Copy of 2002 Return

As for the next misrepresentation, the affidavit states that "Revenue Agent McCardell contacted Kim Benacquista's attorney, Gary Borek in order to obtain another copy of the 2002 1040 Tax Return for Kim Benacquista," (Gov't Hearing Ex. 1, Aff. ¶ 38, emphasis added). The discrepancy appears to be whether the IRS sought "another" copy of that return from Borek, and whether tax agents had two or three copies of the returns. From the record it appears that the agents considered three different returns for the 2002 tax year, the original filed with the Service, the copy produced by Borek (that may or may not have been filed), and the 1040X amended return (see id. ¶ 40). It is not material to the question of whether probable cause was shown whether McCardell contacted Borek for multiple copies of the returns or not.

        C.        Third Misrepresentation–Whether Borek Represented He Was Providing the Copy of the Filed 2002 Return

Next, the affidavit alleged that the copy of the 2002 return "was purportedly a copy of the originally-filed 2002 1040 Tax return," (Gov't Hearing Ex. 1, Aff. ¶ 38). The Government here

11

contends that "tax return" is a term of art, referring to the filed document, that it was reasonable for special agent Menshon to assume that Borek (a thirty-year tax professional and former IRS attorney, Docket No. 46, Tr. at 76-77; see also Docket No. 49, Raymond Post-Hearing Memo. at 4) understood that the information document request sought actually filed returns rather than documents on return forms that may or may not have been actually filed (Docket No. 50, Gov't <u>Franks</u> Response at 13-14).

Here, there is a misunderstanding what the parties each meant by the term "return." The fundamental question, however, is whether this misunderstanding or misstatement is material to Magistrate Judge Schroeder's probable cause finding.

        D.        Fourth Misrepresentation–Amended Returns Were Submitted to the IRS

Fourth, defendants contend that they submitted amended returns to the IRS but the warrant application affidavits erroneously claims that no such amendments were filed. Defendants here have established that there was a reckless disregard of the truth; revenue agents could have researched IRS records to confirm whether defendants attempted to file or filed the amended returns (<u>see</u> Docket No. 49, Raymond Post-Hearing Memo. at 13; Defs. Hearing Ex. C (print out of IRS screen of Kim's transactions with IRS in 2002); Docket No. 46, Tr. at 82-83; Defs. Hearing Ex. E (common or plain language transcript of account); Docket No. 46, Tr. at 84-85 (Borek testifying that code 971, in both Exhibits C and E, means that the amended return was sent back to originator), but instead stated in the affidavit that no amended return was filed (without crediting defendants with even attempting to file). While this is a misstatement, again it is not material to the underlying question of whether sufficient probable cause was shown to support issuance of the warrants.

E.	Necessity or Materiality of These Statements to Probable Cause Finding

Despite the problems (due either to intentional actions[6] or inadvertent recklessness) with these challenged statements in Menshon's affidavit, there are sufficient allegations to support Magistrate Judge Schroeder's probable cause finding to justify issuance of the warrants. The discrepancies pointed out by defendants in these five statements are not sufficiently material to suppress the materials seized under the warrants. Defense objections center on one or two paragraphs in two sixty-four paragraph portions of supporting affidavits to search defendants' home and business, paragraphs that were not central to a finding of probable cause to search. First, defendants do not challenge the assertions to support searching their 2001 tax records (e.g., Gov't Hearing Ex. 1, Aff. ¶¶ 11-31), including a table comparing the original and amended tax return submissions for that year, coupled with deposits into defendants' Merrill Lynch account indicating greater gross receipts than defendants acknowledged in their 2001 returns (original or amended) (id. ¶ 18). That year's allegations do not have the claimed misrepresentations presented for 2002 at issue in this motion. Ultimately, the 2001 taxes were alleged as count I in this Indictment (see Docket No. 1, Indict. Count I). Similarly, the affidavit presents probable cause from documenting defendants' 2000 and 2003 returns, including the under reported gross receipts in those years (Gov't Hearing Ex. 1, Aff. ¶¶ 43-46, 47-50, 45). Even if the misstatements (and 2002 tax year) are excluded, Magistrate Judge Schroeder had probable cause to issue the search warrants. Thus, defendants' motion to suppress should be **denied**.

---

[6]Although defendants assert in a conclusory manner that these misrepresentations, "at their worst," were intentional, see Docket No. 49, Raymond Post-Hearing Memo. at 17, there has been no proof offered to establish that the tax agents intentionally misrepresented these statements.

II.       Second <u>Franks</u> Hearing on Date Defendants Purchased Home

Defendants renew their request for a <u>Franks</u> hearing as to the inaccuracy in the Government's affidavit for the search warrants for their home and Quality's offices based upon when they purportedly purchased it. The affidavit alleged that the home was purchased in 1998 rather than in 1988 (Gov't Hearing Ex. 1, Aff. ¶ 59), although that affidavit refers to a mortgage refinancing that occurred in <u>1992</u> (<u>id.</u> ¶ 54). This inaccuracy initially was found not to rise to the level warranting a <u>Franks</u> hearing because it appeared that one digit was mistyped and other evidence supported probable cause for issuance of the warrants (<u>see</u> Docket No. 36, Report & Rec. at 13; <u>see also</u> Docket No. 32, Gov't Response at 18-19). The Court renews its finding that other evidence supports probable cause (as stated above) and even if this mistake warranted a hearing, the error was not material to Magistrate Judge Schroeder's probable cause determination. There was other evidence, for example the unreported or under reported gross sales figures from Kim's business, to justify the search of defendants' home and business. Therefore, another <u>Franks</u> hearing **will not be held**. Defendants' motions for this relief is **denied**.

## CONCLUSION

Based upon the above and as a result of defendants' joint motion for a <u>Franks</u> hearing for their motions to suppress evidence seized pursuant to the search warrants, it is recommended that defendants' suppression motions (Docket Nos. 29 (Kim Benacquista), 26 (Raymond Benacquista)) be **denied** as discussed above. Defendants' renewed motion for a <u>Franks</u> hearing as to the error in the year of the purchase of their home (Docket No. 49, Defs. Memo. at 9 n.3), is **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
December 3, 2009