UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                          v.                          **Hon. Hugh B. Scott**

                                                      08CR94A

KIM BENACQUISTA,                                  **Order**
RAYMOND BENACQUISTA,

                       Defendants.

Before the Court is the Government's motion for reconsideration (Docket No. 52[1]) of the second Report and Recommendation (Docket No. 51) entered in this case. Response from defendant was due by January 15, 2010, and the motion was argued on January 20, 2010 (Docket No. 55). Familiarity with the Report and Recommendation is presumed.

## BACKGROUND

Defendants Kim Benacquista (hereinafter "Kim") and Raymond Benacquista (hereinafter "Raymond") are charged with two counts of willfully making false statements in their tax returns, both in violation of I.R.C. § 7206(1), and one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, from defendants' tax returns for 2002 and 2003 and the statement of income they received from Kim's business, Quality Quick Printing ("Quality") on tax returns filed for those tax years (see Docket No. 1, Indict.). Defendants separately moved for

---

[1] In support of this motion, the Government relies upon its earlier moving papers in opposition to defense motions, Docket Nos. 32, 50, as well as counsel's affidavit in support of the reconsideration motion, Docket No. 52.
     In response, defendants submitted their respective counsel's declaration, Docket No. 57 (Kim), or affidavit, Docket No. 56 (Raymond), in opposition to reconsideration.

various pretrial relief (Docket No. 29 (Kim), 26 (Raymond)); pertinent to this motion, defendant Raymond Benacquista seeks suppression of evidence seized pursuant to two search warrants, and alternatively has sought a <u>Franks</u> hearing, <u>see</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) (Docket No. 26, Raymond Defense Attorney Aff. ¶¶ 4-7, 8-30; <u>see</u> Docket No. 29, Kim Benacquista Motion at 26-27, 27-31, 49 (joining in co-defendant's motions, including suppression motion)).

After an initial Report and Recommendation (Docket No. 36) denied defense motion to dismiss but granting a suppression hearing, a <u>Franks</u> hearing was held on July 29 and August 24, 2009 (Docket Nos. 40, 41, 45, 46) on five alleged misrepresentations Government agents made to Magistrate Judge Schroeder in applying for search warrants to search defendants' home and Quality's offices (<u>see</u> Docket No. 52, Gov't Atty. Aff. ¶ 3). The subsequent Report and Recommendation issued recommended denying defense motions to suppress (Docket No. 51). The Government seeks reconsideration of some findings leading to that recommendation, but do not seek reconsideration of the ultimate recommendation (Docket No. 52,Gov't Atty. Aff. ¶ 5 n.1). The time for objections to this second Report have been extended in light of the Government's pending reconsideration motion (<u>see</u> Docket No. 54).

*Government's Motion for Reconsideration*

The Government now argues that some of the factual findings "could adversely affect [Special Agent Maxine Menshon's] career as a Special Agent" and these findings "bear on SA Menshon's credibility" should be reconsidered (Docket No. 52, Gov't Atty. Aff. ¶ 5). First, the Government argues that the Court's finding (for defendants' first and fifth alleged misrepresentations) that Menshon "misconstrued" expenses when she testified that "cost of goods sold" was an expense under Schedule C to calculate defendants' tax liability (<u>id.</u> ¶ 7; <u>cf.</u>

2

Docket No. 51, 2d R&R at 9-11), contending that this finding impunes Menshon's credibility in this case (and potentially other cases) (Docket No. 52, Gov't Atty. Aff. ¶¶ 7, 6). The Government points to Menshon's seventeen years experience at the Internal Revenue Service ("IRS" or "Service") and that her testimony that "cost of goods sold" was an expense was uncontroverted, concluding the use of the term "expense" was a "colloquial use" (id. ¶ 7).

Second, the Government seeks reconsideration of the finding for the fourth alleged misrepresentation (cf. Docket No. 51, 2d R&R at 12) that the amended tax return furnished by attorney Gary Borek was "filed" with the IRS when, in fact, any document formally is "filed" with the Service when it is accepted by the Service not just when it is submitted for filing by a tax payer or his or her representative (Docket No. 52, Gov't Atty. Aff. ¶ 9). Further, the Government points out that Menshon testified that she was not aware of whether defendants submitted the amended return to the IRS (see id.; see Docket No. 41, Tr., July 29, 2009, at 31-32 (Menshon's testimony)).

Defendants separately respond that reconsideration is inappropriate here or not authorized by the Federal Rules; the more correct route was for the Government to file formal objections to the Report to the District Judge, which now may be time barred (Docket No. 56, Raymond Atty. AFf. ¶¶ 8-11; Docket No. 57, Kim Atty. Decl. ¶¶ 6, 7-11). Kim moved for extension of time to file her objections (Docket No. 53), which was granted by then-Chief Judge Arcara (Docket No. 54). Defendants later jointly moved for a further extension of the objections deadline (Docket No. 57).

Kim contends, on the merits, that there is no basis for altering the Report (Docket No. 57, Kim Atty. Decl. ¶¶ 13-18), while Raymond concludes that the Government's reason for

3

reconsideration, that the credibility of the agent may now be questioned due to the findings in the Report, is "self-serving" and inadequate grounds to justify reconsideration (Docket No. 56, Raymond Atty. Aff. ¶ 14).

DISCUSSION

I.  Motion for Reconsideration Standard

The Government seeks reconsideration without stating the procedural basis for that request. As noted by Raymond (Docket No. 56, Raymond Atty. Aff. ¶ 11), the Federal Rules of Criminal Procedure make no provision for reconsideration. As noted by the Government during oral argument, Judge Larimer in another case held that the Magistrate Judge there had the "discretion to reconsider or reopen prior proceedings which precipitated" the Magistrate Judge's decision, United States v. Florack, 155 F.R.D. 49, 51 (W.D.N.Y. 1994). In Florack, the Government sought reconsideration (pursuant to then Federal Rule of Criminal Procedure 12(f)[2]) by Magistrate Judge Fisher of his refusal to allow the Government to argue an otherwise defaulted suppression motion, id. at 50-51; see id. at 51-52 (Report & Rec. of Fisher, Mag. J.). Judge Siragusa of this Court held in United States v. Amanuel, No. 05CR6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006), that the civil standard for reconsideration is applicable in criminal cases, that the standard for reconsideration is "strict" and reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," id. (internal quotations and citations omitted).

---

[2]Now, in part, Federal Rule of Criminal Procedure 12(e).

II.       Application–Reconsideration of Findings

The Government urges reconsideration of two findings within the Report and Recommendation, first whether the IRS agent misconstrued "business expenses" in her affidavit and whether she failed to note defendants attempt to file their amended return by stating in her affidavit that no amended return was filed. This Court will exercise its discretion and **reconsider** these two points.

       A.       Whether Menshon Misconstrued "Expense"

The Government argues that the Court impunes agent Menshon's credibility by finding that she "misconstrued" expense to include cost of goods sold as an expense. The Government, however, fails to show data or controlling decisions that make this finding erroneous. While not intending to impugn Menshon's credibility, as an agent of the IRS investigating taxpayers' characterization of business expenses the colloquial use of the term "expense" was not appropriate.

Nevertheless, this discussion in the Report was not essential to reaching the ultimate finding, that the accounting for expenses was not material in establishing probable cause for conducting the search in order to strike the warrant and ultimately suppress the materials seized. As recommended previously (Docket No. 51, 2d R&R at 10-11, 13), the characterization of defendants' entries, and whether their business expenses were one figure or another, was not material to determining whether there was probable cause to search defendants' property and offices. What was material for determining probable cause to search was the table submitted with the warrant application that showed overall discrepancies between defendants' original and amended tax returns and defendants' deposits in a financial institution's account, showing the

5

discrepancy between the declared gross receipts and defendants' apparent actual receipts. As previously noted (and reaffirmed here) "The gist of this table [in the agent's supporting affidavit] for 2002 (similar to the tables for other tax years presented in that affidavit) was that defendants presented varying alternative figures for their business receipts and expenses, providing probable cause to justify a search of their records," (Docket No. 51, 2d R&R at 11). Probable cause existed to search for the other tax years in which similar discrepancies were shown.

Thus, there are no "serious doubts," cf. United States v. Perez, 247 F. Supp. 2d 459, 473 (S.D.N.Y. 2003); United States v. Whitley, 249 F.3d 614, 621 (7th Cir. 2001) (cf. Docket No. 49, Defs. Jt. Memo. at 7), as to the truthfulness of Menshon's affidavit as to the discrepancies in defendants' reported business receipts so as to have her search warrant application affidavit rejected as being made in reckless disregard for the truth. Nor was this characterization of facts material to Magistrate Judge Schroeder's probable cause finding, cf. United States v. Klump, 563 F.3d 113, 119 (2d Cir. 2008); even if this fact is omitted from the affidavit, the remainder presented sufficient evidence to support probable cause to issue the warrants. However this characterization may be viewed at trial, it is not material to the probable cause determination for issuance of the search warrant (and at issue in the defense motions) and the Government's motion to reconsider these findings is **granted**; the second Report and Recommendation (Docket No. 51) is **vacated** and will be amended on this point consistent with the decision herein.

  B.  Whether the Amended Return Was "Filed"

The Government next seeks reconsideration of the findings surrounding agent Menshon's statement regarding defendants' failure to file amended returns in 2002. At issue is Menshon's statement (in bracketed text) that "A check of IRS databases revealed that these Amended

6

Returns [for 2000 and 2002] have not been filed with the Internal Revenue Service even to this date," (Docket No. 26, Ray Motion, Ex. 1, ¶ 32), describing the content of documents produced by Gary Borek to another agent. The Report stated that

> "Fourth, defendants contend that they submitted amended returns to the IRS but the warrant application affidavits erroneously claims that no such amendments were filed. Defendants here have established that there was a reckless disregard of the truth; revenue agents could have researched IRS records to confirm whether defendants attempted to file or filed the amended returns (see Docket No. 49, Raymond Post-Hearing Memo. at 13; Defs. Hearing Ex. C (print out of IRS screen of Kim's transactions with IRS in 2002); Docket No. 46, Tr. at 82-83; Defs. Hearing Ex. E (common or plain language transcript of account); Docket No. 46, Tr. at 84-85 (Borek testifying that code 971, in both Exhibits C and E, means that the amended return was sent back to originator), but instead stated in the affidavit that no amended return was filed (without crediting defendants with even attempting to file). While this is a misstatement, again it is not material to the underlying question of whether sufficient probable cause was shown to support issuance of the warrants."

(Docket No. 51, 2d R&R at 12.)

Kim faults agent Menshon for not investigating Service records before swearing that defendants did not file amended returns (Docket No. 57, Kim Atty. Decl. ¶ 17).

Like "business expense," whether a document (particularly a return) is "filed" appears to be a term of art within the IRS, as distinguished from whether that document was submitted by the taxpayer. The Government argues that a document is "filed" with the Service only upon its acceptance by the Service (Docket No. 52, Gov't Atty. Aff. ¶ 9), but the Government does not cite to any Internal Revenue Code provision or tax regulations to support this contention. Borek testified in the hearing that there is no way to know a return produced by a taxpayer was filed with the IRS absent a document location number affixed to it by the Service, explaining that his statement to IRS agent that he could not produce a copy of the filed return (absent an order from

7

the Service for a copy) (Docket No. 46, Aug. 24 Tr. at 99-100, 79-83). Even if defendants had attempted to file the amended return (and it was rejected by the Service) affiant Menshon was not aware of that attempted filing, or would have been aware had she noted a code for receipt and rejection of the submitted document. But Menshon's statement in her affidavit–that defendants had not <u>filed</u> amended returns–remains uncontested despite defendants' attempt to do so by their apparently rejected submission. Upon further consideration, since the agent's statement was true, there was no reckless disregard of the truth and the earlier finding to the contrary is **vacated**. Thus, the Government's motion to reconsider this finding is **granted** and that portion of the Report will be revised consistent with this Order.

## CONCLUSION

For the reasons stated above, the Government's motion for reconsideration (Docket No. 52) of the second Report and Recommendation (Docket No. 51) filed on December 3, 2009, is **granted**, in that the finding regarding construction of business expense entries and the amended return shall be revised. That second Report and Recommendation (Docket No. 51) is **vacated** and an amended Report and Recommendation consistent with this Order shall be entered and a new period for any objections to the amended Report will be set in that Report.

So Ordered.

*/s/ Hugh B. Scott*
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
February 10, 2010